IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
NO. 5:16-cv-200-GCM

| | |
|---|---|
| CHRISTOPHER STORTZ,<br><br>          Plaintiff,<br><br>v.<br><br>CHEROKEE INSURANCE COMPANY,<br>CENTRAL TRANSPORT, LLC, and<br>CENTRAL TRANSPORT, LLC,<br>WELFARE BENEFIT PLAN<br><br>          Defendants. | ORDER |

**THIS MATTER** is before the Court on the Motion for Attorney Fees, Costs, and Interest (Doc. No. 40) filed by Plaintiff Christopher Stortz. Defendants have responded and Plaintiff has submitted a reply. The matter is now ripe for decision. For the reasons set forth below, Plaintiff's Motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff Christopher Stortz ("Plaintiff"), was employed by Defendant Central Transport, LLC ("Central Transport"). As an employee, he was a beneficiary under the Central Transport, LLC, Welfare Benefit Plan (the "Plan"). The Plan offers medical benefits, including coverage for emergency medical services. Defendant Cherokee Insurance Company ("Cherokee") fully insures the group health benefits provided through the Plan. Cherokee has authority to grant or deny benefits and is therefore a fiduciary of the Plan, as defined in ERISA § 3(21), 29 U.S.C. § 1002(21), with respect to that activity. Central Transport is the administrator of the Plan and is thus also a fiduciary of the Plan as defined in ERISA § 3(21), 29 U.S.C. § 1002(21).

1

In November 2014, Plaintiff required emergency hospitalization and treatment. Plaintiff submitted medical information to Cherokee in support of a claim for benefits. Cherokee began payment of health benefits on Plaintiff's behalf, but on May 18, 2015, Cherokee denied a portion of Plaintiff's claims. Plaintiff requested an appeal of the denial pursuant to the terms of the Plan, and Cherokee again denied the claim.

At the time of the denial of Plaintiff's internal appeal, the Plan contained no provisions providing for an external appeal by an external review organization ("ERO"), as required by 42 U.S.C. § 300gg-19. Accordingly, Plaintiff exhausted all available administrative remedies and brought suit against Central Transport, the Plan, and Cherokee (collectively, the "Defendants") in this Court. Plaintiff's Complaint alleged: (1) that Defendants wrongfully denied him benefits under 29 U.S.C. § 1132(a)(1)(B); (2) that Defendants breached their fiduciary duties in numerous ways; (3) that Plaintiff is entitled to injunctive and other equitable relief; and (4) that Plaintiff is entitled to attorney fees and costs.

After service of the Summons and Complaint, Cherokee offered an external review of the denied claims by an ERO, and the Court granted a stay in the matter pending the ERO review. On March 2, 2017, the ERO concluded that Plaintiff's claims were payable under the Plan. The Court further stayed proceedings to allow the parties time to try to negotiate a final resolution of the matter. Because agreement could not be reached, Defendants filed a responsive pleading on June 19, 2017.

Cherokee paid 100% of the claims at issue directly to the providers on or about July 21, 2017. The amount that the providers were requesting from Plaintiff was $120,829.69, but because Cherokee was able to obtain a PPO discount, it paid off Plaintiff's outstanding medical

payments for $92,497.70. The Defendants also amended the Plan, effective November 1, 2017, to address external review rights in accordance with ERISA.

Discovery continued with respect to the issue of attorney fees, and on November 9, 2017, the parties attempted to resolve the matter through mediation but reached an impasse. On January 8, 2018, the parties jointly moved the Court for entry of a Consent Judgment and Order, which represented a complete resolution of all of Plaintiff's claims except the amount of reasonable attorney fees and costs and whether Plaintiff is entitled to pre-judgment or post-judgment interest on the amount of his benefit claims. The Court entered the Consent Judgment and Order on January 10, 2018.

Plaintiff now moves for (1) attorney fees in the amount of $73,305.00; (2) costs in the amount of $400; (3) pre-judgment interest in the amount of $19,462.38; and (4) post-judgment interest accrued at the federal rate from January 10, 2018, until Defendants pay reasonable attorney fees, cost, and the pre-judgment interest.

## II. DISCUSSION

### A. Attorney's Fees

Plaintiff's Motion seeks attorney's fees in the amount of $73,305.00, based on the effort expended in this matter on Plaintiff's behalf by two attorneys and two paralegals at Marcellino & Tyson, PLLC ("the Firm"). Plaintiff submitted a memorandum and affidavits supporting its claim, as well as an itemized time sheet for the time and labor expended in this action and the initial contingency fee agreement reached by Plaintiff and the Firm. Defendants concede that a fee award is appropriate in this matter—and the Court has already determined as much in its Consent Judgment and Order—but Defendants contest the reasonableness of Plaintiff's claimed fee and argue that Plaintiff should be entitled to no more than $34,460.00. Plaintiff, in reply,

amended its request to $84,980.00, justifying the increase on 31.4 hours spent working on the reply brief.

"In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). A court must be guided by twelve factors when determining what is a reasonable rate and reasonable number of hours:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* at 243–44 (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978)). After determining the lodestar figure, the court must then subtract fees for hours spent on unsuccessful claims and then award a "percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* at 244 (quoting *Grissom v. Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008)).

Plaintiff argues that all of the relevant factors lean in his favor, but he relies heavily on the factors related to the time expended, skill of the Firm, results obtained, and customary fee for like work in support of the proposed award. Plaintiff has further provided affidavits demonstrating that these rates accurately reflect the normal rates of these members of the Firm and are in line with the prevailing rate of fees in an ERISA matter in this geographical region.

Defendants do not dispute that the hourly rate set by Plaintiff's attorneys is reasonable, but they challenge the proposed fee award primarily on the first factor: amount of time expended.

Defendants claim that this figure is inflated and unreasonable for four reasons. First, Defendants assert that the Firm is attempting to bill 41.5 hours for work that was expended on issues that were unnecessary or irrelevant to the resolution of this matter. Second, Defendants argue that the Firm is attempting to bill 14.5 hours for merely administrative or clerical tasks. Third, Defendants claim that the rationale supporting 1.3 of the hours claimed by the Firm are vague and that this time should not be compensated. And finally, Defendants argue that an additional 38.7 hours claimed by the Firm should be discounted because it was spent on tasks that were duplicative, redundant, and excessive.

The Court finds that the number of hours claimed by the Firm is unreasonably high. While the Court agrees with Plaintiff that hours spent in settlement negotiations may be properly billed, the volume of those hours in proportion to the rest of the work in resolving this matter is unreasonably high. Further, there are significant redundancies showing that some of the time spent by Plaintiff's attorneys was excessive. Additionally, several of the tasks identified by Defendants as clerical work, such as printing, mailing, and issuing payments, must be discounted from the billable total. But the Court finds that all of the hours spent meeting with the client to discuss matters related to the case and potential settlement are properly included.

The Court also agrees with Defendants that a "disproportionately large" portion of the claimed hours arose after Cherokee paid Plaintiff's medical bills and after Central Transport amended its Plan to include external review rights. The medical bills were paid on July 24, 2017, and the Plan amendments were effective November 1, 2017. However, taking into account Plaintiff's updated hours claim in his reply, Plaintiff's attorneys spent over 110 hours working on discovery, in mediation, drafting a consent order, and litigating the questions of interest and attorney's fees *after* November 1, 2017. Given that Plaintiff's sought-after relief had already

been attained during this time—though not formalized in a consent judgment—this amount of time is unreasonably high.

Finally, while Plaintiff asserts that the sixth factor, the expectations of the attorney at the outset of litigation, does not provide much guidance in determining reasonableness here, the Court finds that it is a helpful factor of consideration. In *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974), the case from which the twelve factors are drawn, the Fifth Circuit held that "[t]he fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Id.* at 718 (abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

Here, the fee agreement between Plaintiff and the Firm shows that both Plaintiff and the Firm expected the Firm to receive 36% of any settlement obtained after the filing of the Complaint and before the matter is called for trial. Plaintiff did not technically receive a settlement award, as Cherokee paid the amount owed directly to the providers, but Plaintiff did effectively gain an economic benefit of $120,829.69—the amount he would have owed had the suit not been filed. Assuming that Plaintiff had been awarded such a sum directly, the Firm would have been entitled to $43,498.69. This factor is not dispositive nor does it set a mandatory ceiling for recovery, *see Blanchard*, 489 U.S. at 93, but it is helpful in evaluating the expectations the Firm and the reasonableness of the fee.

Overall, the Court finds that the fee requested by Plaintiff's attorneys is unreasonably high, primarily because Plaintiff's attorneys expended an unreasonable number of hours on this matter. Further, the Court finds that the expectations of the attorneys at the outset of litigation were for a significantly smaller fee than what is requested in Plaintiff's motion and reply. However, the Court also recognizes the complexity of ERISA cases and the significant result

Plaintiff's attorneys achieved on behalf of Plaintiff and future Plan beneficiaries. Accordingly, the Court finds that, in light of all of the factors discussed in *Robinson*, a fee award of $55,000 is appropriate in this matter.

**B. Costs**

Plaintiff also requests $400 in costs under Federal Rule of Civil Procedure 54(d)(1). Plaintiff incurred this cost as a filing fee with the Court. Defendants do not object to reimbursing Plaintiff $400 for his filing fee. Accordingly, the Court will award Plaintiff $400 in costs.

**C. Pre-Judgment Interest**

Plaintiff requests an award of pre-judgment interest on the amount of medical bills that Defendants improperly failed to pay from the date the medical expenses were incurred, December 4, 2014, until the date Defendants paid the expenses, July 21, 2017.

The Supreme Court has held that "[p]rejudgment interest is an element of complete compensation." *West Virginia v. United States*, 479 U.S. 305, 310–11 (1987). "ERISA does not specifically provide for pre-judgment interest, and absent a statutory mandate the award of pre-judgment interest is discretionary with the trial court." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1030 (4th Cir. 1993) (en banc). Generally, pre-judgment interest is awarded "to compensate [a party] for the loss of the use of his funds." *Id.*

Here, however, Plaintiff did not pay any of the disputed medical expenses out-of-pocket. Rather, it was the medical providers who were deprived of funds for the relevant time period. Plaintiff argues that pre-judgment interest is nonetheless appropriate because part of the goal of pre-judgment interest is to prevent unjust enrichment. *See Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 697 (7th Cir. 1991). While several ERISA cases have granted an award of pre-judgment interest, Plaintiff cites to no cases—and the Court has found none—supporting an

7

award of interest to a party who was not personally entitled to a damages award or who otherwise suffered tangible harm as a result of the delay in payment. *See id.* ("[D]ue to defendants' refusal to pay the medical benefits under the plan the plaintiffs incurred a judgment for surgeons' fees (which is accruing interest) and suffered impaired credit."); *Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, 823 F. Supp. 2d 307, 325 (D. Md. 2011) ("[I]nterest is necessarily awarded in this case both to fully compensate the FMCP for loss of use of funds wrongly withheld and to prevent CareFirst from unfairly benefitting by its delay in payment.").

Plaintiff was not required to pay the medical expenses himself, nor has he claimed any specific harm from the delay other than the time expended prosecuting this case. Accordingly, the Court finds that an award of pre-judgment interest would result in a windfall to Plaintiff, as Plaintiff has never been deprived of funds that he otherwise could have been investing. Thus, the Court finds that an award of pre-judgment interest is not appropriate in this matter.

### D. Post-Judgment Interest

Plaintiff requests an award of post-judgment interest on the attorney's fees, costs, and pre-judgment interest awarded in this matter. Although the Court has not awarded pre-judgment interest, it has awarded costs and attorney's fees. Under federal law, post-judgment interest should be applied to "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Defendants argue that the Consent Judgment and Order did not constitute a money judgment because Defendants had already paid all outstanding medical claims from the providers. Defendants misinterpret Plaintiff's request and overlook the fact that an award for costs and attorney's fees is a money judgment subject to 28 U.S.C. § 1961. *See Hubbard v. Total Commc'ns, Inc.*, 623 F. Supp. 2d 270, 271 (D. Conn. 2009) (finding that an award of attorney's fees, costs, and pre-judgment interest was a money judgment entitled to post-judgment

interest); *Littlejohn v. Null Mfg. Co.*, 619 F. Supp. 149, 151 (W.D.N.C. 1985) (finding that post-judgment interest was due on attorney's fee award). Thus, post-judgment interest must be applied to the $55,400 that Defendants currently owe to Plaintiff.

Thus, the only issues remaining are (1) the interest rate and (2) the date from which interest accrues. The statute provides that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment." 28 U.S.C. § 1961(a). In order to determine the interest rate and date of judgment, the Court must decide whether the applicable date of the "money judgment" is the date of the Consent Judgment and Order or the date of this Order.

A circuit split exists on the question of whether post-judgment interest accrues on attorney's fees and costs from the date of judgment or from the date that such an award is quantified. The Fifth, Sixth, Eighth, Ninth, Eleventh, and Federal Circuits all conclude that interest should accrue from the date the party becomes entitled to the award, even if the award is not quantified until a later date. *See Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 493 (6th Cir. 2001); *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391–92 (9th Cir. 1995); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 332 (5th Cir. 1995); *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1053 (11th Cir. 1994); *Jenkins by Agyei v. State of Mo.*, 931 F.2d 1273, 1277 (8th Cir. 1991); *Mathis v. Spears*, 857 F.2d 749, 760 (Fed. Cir. 1988). The Third, Seventh, and Tenth Circuits have found that a plaintiff is only entitled to post-judgment interest on portions of the award as they are quantified. *See Eaves v. County of Cape May*, 239 F.3d 527, 531 (3d Cir. 2001); *MidAmerica Fed. Sav. & Loan Ass'n v.*

*Shearson/American Express, Inc.*, 962 F.2d 1470, 1476 (10th Cir. 1992); *Fleming v. Count of Kane, State of Ill.*, 898 F.2d 553, 565 (7th Cir. 1990).

The Fourth Circuit has not directly ruled on the issue, but in *McDevitt & Street Co. v. Marriott Corp.*, 948 F.2d 1281 (4th Cir. 1991) (per curiam), the Fourth Circuit held that when a judgment is valid, "the date of the first judgment is the single operative date" for the accrual of post-judgment interest, even if the amount of an award is subsequently modified through an appeal. *Id.* at *2.

This Court agrees with the majority of circuits to have addressed this issue and finds that the entry of its prior Consent Judgment and Order finding that Plaintiff is entitled to attorney's fees and costs is the correct "money judgment" from which interest accrues. Thus, the interest shall be calculated from January 10, 2018, computed daily, and compounded annually to the date of payment. *See* 28 U.S.C. § 1961(b). The interest rate shall be "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding" January 10, 2018. *Id.* § 1961(a).

## II. CONCLUSION

Accordingly, the Court hereby **GRANTS IN PART, DENIES IN PART** Plaintiff's Motion for Attorneys' Fees, Costs, Pre-Judgment Interest, and Post-Judgment Interest as follows:

1. Defendants shall pay Plaintiff $55,000 in attorneys' fees;
2. Defendants shall pay Plaintiff $400 in costs;
3. Plaintiff is not entitled to pre-judgment interest; and
4. Defendants shall pay Plaintiff post-judgment interest on the $55,400 awarded as costs as fees. Interest shall accrue from January 10, 2018, be computed daily at the federal

10

interest rate defined in 28 U.S.C. § 1961(a), and be compounded annually to the date of payment.

**SO ORDERED.**

Signed: April 12, 2018

Graham C. Mullen
United States District Judge